UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LORI FORD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-0213- DFH-TAB |
| | ) | |
| CITY OF CRAWFORDSVILLE, INDIANA, | ) | |
|     Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON TERMS OF SETTLEMENT AGREEMENT**

**I.   Introduction.**

Plaintiff Lori Ford filed a complaint for employment discrimination based upon sex, hostile work environment, and retaliation against Defendant City of Crawfordsville ("The City") on February 20, 2007.  [Docket No. 1.]  On July 25, 2007, the parties appeared before this Court, in person and by counsel, for a settlement conference.  [Docket No. 23.]  That conference culminated in the handwritten, signed settlement agreement, which is attached as Exhibit 1.  However, the parties have since failed to convert this agreement into an agreed upon, formalized document.  On August 22, 2007, the parties by counsel participated in a telephonic status conference to address issues regarding the terms of the settlement.  [Docket No. 25.]  The Court ordered the parties to file an agreed upon document reflecting all terms of the settlement negotiated during the July 25 settlement conference by August 31, 2007.  Each party subsequently submitted documents setting forth what they believed were the terms of the agreement.  [Docket Nos. 27, 31.]  On September 25, 2007, the parties appeared for a hearing on the terms of the settlement agreement, at which time each party was given an opportunity to be

heard. [Docket No. 32.]

**II.   Discussion.**

**A.  Agreed Terms**.

According to the proposed settlement agreements provided by each of the parties [Docket Nos. 27, 31], the parties are in agreement as to the following settlement terms:[1]

> This **SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS** (hereinafter also referred to as "Agreement") is made and entered into by Lori Ford (hereinafter referred to as "Ford") and The City of Crawfordsville (hereinafter referred to as "The City").
> Whereas, Ford has been employed by The City and continues to be employed by the City as a Sergeant with the Crawfordsville Police Department, and Ford has made allegations and claims concerning her employment with The City and specifically has claimed gender discrimination, retaliation, and hostile work environment by the City arising out of her work with the Crawfordsville Police Department and the affect of such alleged gender discrimination and retaliation upon her physical and mental well being; and
> Whereas, The City denies and continues to deny any fault, wrongdoing or liability on its part or on the part of any of The City's predecessors, successors, assigns, agents, directors, officers or employees with respect to Ford's allegations and claims; and
> Whereas, Ford and The City now believe it is in the best interests of both parties to enter into a mutually satisfactory agreement regarding Ford's claims against the City. Both parties consider this Agreement an appropriate resolution for Ford's claims of gender discrimination, retaliation, and hostile work environment and the damages allegedly arising from these asserted claims; and
> Now, therefore, in consideration of the mutual promises, agreements and covenants contained in this Agreement, the parties agree as follows:
>
> 1. **Non-Admission**. This Agreement shall not in any way be construed as an admission by The City or its agents of any improper or unlawful conduct whatsoever

---

[1] Disputed language is not included. The wording used by the parties in certain uncontested places varies slightly, in which cases the Court has selected the precise wording without effecting any material change to the agreement. Also, Plaintiff's proposed settlement agreement did not include Defendant's paragraph asserting Defendant's continued denial of fault. Plaintiff did not dispute inclusion of this paragraph at the September 25 hearing, so it is included.

against Ford or any other person and The City specifically disclaims any liability to Ford or any other person.

2. **Continued Employment until Eligible for Retirement**. Ford is and will continue to be employed by The City as a Sergeant with the Crawfordsville Police Department in the position of Station Sergeant supervised by the Assistant Chief of Police. Ford Agrees to retire upon reaching her date of retirement, on or before December 31, 2010.[2,3]

> a. Ford is assigned as the position of Station Sergeant, a position of equal rank to her prior assignment with the detective division of the Crawfordsville Police Department. This assignment is not a demotion, loss, or diminishment of Ford's position with the police department, but a position transfer that is in the best interests of the parties.
>
> b. Ford will be the Station Sergeant working in the police station Monday through Friday from 8:00 a.m. to 4:00 p.m.
>
> c. The dress for the position of Station Sergeant requires a dark blue polo style shirt with a gold badge insignia indicating the rank of Sergeant, a badge, and a gun.
>
> d. Ford's job duties and responsibilities in the position of Station Sergeant are and shall continue to be until the time of her retirement as follows without additions or alterations:

---

[2] Plaintiff wanted to add the following provision to Paragraph 2: "The City further agrees that Ford is not responsible for civil matters that are not otherwise related to performance of the duties and responsibilities outlined above." [Docket No. 31 at 2.] During the September 25 hearing, Defendant argued that distinguishing between criminal and civil matters may not be possible in some cases and Plaintiff agreed that the phrase should be deleted from the final settlement agreement.

[3] Defendant wanted to reiterate in a sub-paragraph to Paragraph 2: "Ford hereby agrees that she will retire from the Crawfordsville Police Department and from her employment with the City in any capacity when first eligible and no later than December 31, 2010." [Docket 27 at 2.] No issues were raised regarding this provision during the September 25 hearing. However, given that Paragraph 2 already provides that Ford will retire on or before December 31, 2010, this provision need not be repeated.

- Administer gun permits[4];
- Run VIN checks for Officers;
- Administer subpoena compliance;
- Monitor active warrants and make a list available to Officers.

3. **Pending Complaints**. Ford represents that she and/or her counsel on her behalf shall execute a Stipulation of Dismissal With Prejudice that shall dismiss any and all pending complaints or claims against The City in any state or federal court. Ford further represents that she shall take all necessary steps to dismiss any pending charges of discrimination with the EEOC or the Indiana Civil Rights Commission.

4. **Payment of Wages, Vacation Pay & Benefits**. Ford acknowledges she has been paid all of her accrued wages, vacation pay and other benefits owed to her as a result of her employment with The City.

By way of this agreement, Ford is provided the following paid time off from her employment with The City:

- 12 Sick Days (to roll over)
- 7 Vacation Days (to be used by the end of 2007)
- 7 Earned Days (to be used by the end of 2007)

By signing this Agreement, Ford agrees that she is entitled to the consideration provided in the agreement and that no additional consideration is required to secure her agreement to these Settlement Provisions.

5. **Payment and Other Consideration**. In full compromise and settlement of all claims, demands, damages, actions and causes of action, arising out of, resulting from or in any way connected with Ford's employment with The City, The City agrees to pay Ford the sum of $10,000 for personal physical injury and physical illness which amount includes any legal fees to Ford's counsel or medical expenses incurred. Ford understands and agrees that she is not otherwise entitled to this payment under any of The City's practices or policies. This payment shall be made payable to Lori Ford after this **SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS** is executed by Ford. No taxes shall be taken out of this monetary amount.

---

[4]During the September 25 hearing, Plaintiff raised the issue that she has been made to do all finger-printing, not just finger-printing relating to the administration of gun permits. The handwritten settlement agreement does not address finger-printing. Defendant agrees that this is not part of Plaintiff's duties and assures the Court that it will no longer be required of her.

6. **Taxes**.  It is understood and agreed that in accordance with the current Internal Revenue Service regulations that The City will issue to plaintiff's counsel, Ellen Corcella, an IRS Form 1099 for the above-described payment at the appropriate time.  Ford warrants and agrees that The City has made no representation or warranty with respect to the taxability of said payment to Ford for federal income tax purposes, and that Ford will seek her own independent professional income tax advice with respect to said issue.  Ford agrees to indemnify and hold The City harmless from any and all claims, demands, deficiencies, levies, assessments, executions judgments or recoveries by any governmental entity against The City for amounts claimed due on account of this agreement pursuant to claims made under any federal, state or local tax laws, including any costs, expenses or damages sustained by The City by reason of any such claim, including attorney's fees, fines, penalties, interest or otherwise.

7. **Waiver and Release of All Claims**.  This Agreement contains **A RELEASE AND DISCHARGE OF ALL KNOWN AND UNKNOWN CLAIMS** Ford may have against The City and its agents except those claims relating to the enforcement of this Agreement.  Ford hereby irrevocably and unconditionally releases The City and its agents from any and all charges, claims, complaints, liabilities, promises, rights, causes of action of any nature whatsoever, or rights enforceable in any forum, whether a court or an administrative agency, known or unknown, suspected or unsuspected, including but not limited to rights under federal, state or local laws prohibiting race, sex, age, disability, national origin, or other discrimination, harassment, or retaliation (e.g., the Title VII of the Civil Rights Act of 1964, as amended, 420 U.S.C. §2000e-2; the Age Discrimination in Employment Act, the family and Medical Leave Act, the Americans with Disabilities Act, 42 U.S.C. 12101 et. seq., or the Indiana Civil Rights Act, I.C. 22-9-1 et. seq.) or claims or rights arising out of any alleged violations of any contracts, express or implied, or any covenant of good faith and fair dealing, express or implied, or any tort, or any claims arising out of the compensation owed, owing or to be owed to Ford.

8. **The City**.  "The City and its agents" as used in this Agreement means the City of Crawfordsville, its associations, or entities (by either ownership or control, or both), members, affiliates, sponsored or related corporations of The City and their predecessors, successors and assigns, including the Crawfordsville Police Department and Chief Kurt Knecht in his individual and professional capacities.  In addition, The City includes any one or more of the officers, directors, managers, supervisors, employees, representatives and attorneys of any entity above described and, all persons acting by, through, under or in concert with any of them.

9. **Full Knowledge, Consent and Voluntary Signing**.  Ford represents and acknowledges that in executing this Agreement, she does not rely and has not

5

relied on any representation or statement by The City or its agents, other than the statements which are contained within this Agreement.  Ford represents and agrees that she was advised of her right to, and had the opportunity to, consult with Ellen Corcella, an attorney of her choosing, concerning this Agreement, that she has carefully read and fully understands all of the provisions of this Agreement, and that she is knowingly and voluntarily entering into this Agreement.

10.  **Severability**.  This Agreement sets forth the entire understanding between Ford and The City and this Agreement fully supersedes any and all prior oral, written or implied agreements or understandings between Ford and The City relating to the subject matter hereof.  If one or more provisions or terms of this Agreement shall be determined to be unenforceable, the remainder of the Agreement shall remain in full force and effect.

11.  **Choice of Law**.  The terms of this Agreement shall be fully binding on the heirs, administrators, representatives, successors and assigns of each party hereto and shall be interpreted according to the laws of the State of Indiana.

12.  **Entire Agreement**.  This Agreement contains the entire agreement between the parties and it may not be changed orally but only by agreement in writing signed on behalf of The City by the mayor.

**B.  Disputed Terms.**

While the foregoing provisions of the settlement agreement are undisputed, the parties are unable to reach an agreement on several additional provisions.  First, with respect to Paragraph 2(c), Plaintiff requests the addition of the following language: "Ford will be assigned a cell phone and a vehicle will be available as needed to perform responsibilities that may extend beyond the Station House." [Docket 31 at 1-2.]  Plaintiff contends this equipment is needed to carry out her duties.  Specifically, Plaintiff argues a vehicle is needed for making coin deposits, and a cell phone is necessary if Plaintiff is called for an emergency.

Defendant argues that Plaintiff does not need a personal cell phone or vehicle for the duties listed in the handwritten settlement agreement.  Defendant notes that Plaintiff's duties will keep her primarily at the Station House and that station vehicles are available for employees if

needed for duties extending beyond the Station House.  Defendant further agreed not to require Plaintiff to make coin deposits, thereby eliminating the need for a vehicle.

The Court notes that a cell phone and vehicle were not included in the terms of the attached handwritten agreement.  Furthermore, a cell phone and vehicle are not necessary for Plaintiff to perform her duties as listed in the handwritten agreement.  Therefore, the statement proposed by Plaintiff should not be included in the final settlement agreement.

With regard to Paragraph 2(d), the parties are unable to agree on all of Plaintiff's duties as Station Sergeant.  First, Plaintiff contends that her duties will include management of the property room.  Defendant contends that the handwritten agreement includes management of the evidence room.  The handwritten agreement states "evidence room manager."  Plaintiff acknowledges her error and claims that she was confused regarding the terminology.  This claim of confusion is insufficient under the circumstances to alter the parties' agreement.  Therefore, Plaintiff's duties should include management of the evidence room in the final settlement agreement.

Next, the parties are unable to agree on what is meant by the phrase "property return - found property" in the handwritten agreement regarding Plaintiff's duties.  Plaintiff argues that "property" does not include impounded vehicles that are not being held as evidence in criminal matters.  Plaintiff further argues that the Crawfordsville Police Department's policy and procedure manual uses the term property to mean property that may be kept in the property room. Plaintiff contends that cars cannot fit into the property room so they cannot be "property" as defined by the policy manual.  She says she has enough duties as listed in the handwritten agreement to keep her busy without the addition of impounded cars, and she argues that returning impounded cars has traditionally been the duty of the dispatchers.

Defendant contends that "property return," as listed in the handwritten agreement, encompasses all property, including impounded cars. Defendant further contends that the parties did not discuss any exclusions at the settlement conference and that Plaintiff would not have enough duties if impounded cars were not included as property.

Again, the handwritten settlement agreement does not specify any exclusions, it just specifies that the property is "found." Likewise, the agreement makes no reference to the manual for purposes of defining terms. Thus, to the extent any property is found and needs to be returned, it falls under Plaintiff's description of duties. The duty should include all found property without exclusion, and the agreement should simply read: "Administer the return of found property."

In addition, the parties are unable to agree on the scope of the duty requiring Plaintiff to take "walk-in complaints." Plaintiff has added "regarding criminal matters," to her proposed settlement agreement [Docket No. 31 at 2], maintaining that she is currently being asked to address all walk-in matters (e.g., giving people directions, fielding questions about wheelchair accessibility, etc.), not just complaints. Defendant argues that it is impossible to discern at the outset whether a complaint is going to be civil or criminal, and that as a result Plaintiff necessarily must field some public inquiries that do not rise to the level of a complaint.

The handwritten agreement does not specify a particular type of complaint Plaintiff is required to address, and thus according to the terms of the agreement, she is to address all complaints regardless of whether they are civil or criminal. On the other hand, the agreement does not indicate that Plaintiff needs to address anything but complaints, so she should not be called to the front of the station until Defendant has determined that a walk-in has a complaint of

some sort. The language in the final settlement agreement should reflect this clarification as follows: "Administer all walk-in complaints, including taking the initial report and entering same into Crime-busters for later assignment to detective or patrol division. Ford is not responsible for follow up on initial reports and is not responsible for walk-in matters not involving a complaint."

Further, Plaintiff added the following clause to Paragraph 2 of her proposed settlement agreement:

> The City agrees that no employee of The City including the Crawfordsville Police Chief, Assistant Chiefs, Lieutenants or any other officer or employee shall not in any way now or in the future, change, alter or add to Ford's duties as outlined in this Agreement. The City agrees to waive any defense to a violation of this agreement by a City Employee based upon ignorance of the terms and details and/or lack of knowledge of the provisions of the Agreement.

[Docket No. 31 at 2.] Defendant argues that the clause requires all City employees to know the terms of the settlement agreement, or waive any defense to a violation of the agreement based upon ignorance of the terms. Defendant contends that anti-retaliation laws should govern this situation rather than the settlement agreement. The Court agrees with Defendant, particularly because the signed agreement does not contain this provision.

Regarding Paragraph 3, Plaintiff wants to add language stating that only claims based on events occurring prior to July 27, 2007, will be dismissed. [Docket No. 31 at 3.] Defendant concedes that it cannot cause the release of future claims by Plaintiff. Appropriate language to this effect should be added in Paragraph 3 of the final settlement agreement.

With respect to Paragraph 4, Plaintiff requests the addition of language stating that her "current accrued vacation time and/or pay and pension, retirement and health benefits that she has earned are not otherwise impacted by this Agreement and she remains entitled to those earned benefits." [Docket No. 31 at 3.] Plaintiff is concerned that Defendant will interpret the phrase

9

"accrued wages, vacation pay and other benefits" in Paragraph 4 to include future benefits owned to her by Defendant. Defendant contends that Plaintiff's language is redundant and confusing, and Defendant wants a full release of claims. All of Plaintiff's wages, vacation pay, and benefits have been paid to date. The parties agree that Plaintiff will accrue all benefits, wages, and vacation pay owed to her going forward. Thus, the Court agrees that Defendant has a right to full release of the claims, and Plaintiff's language should not be included in Paragraph 4 of the final settlement agreement.

Regarding Paragraph 7, Plaintiff wants to add language stating that only claims based on events occurring prior to July 27, 2007, will be released and discharged. [Docket No. 31 at 4.] Defendant again concedes that it cannot cause the release of future claims by Plaintiff. Therefore, the Court should add language to this effect in Paragraph 7 of the final settlement agreement.

With regard to Paragraph 12, the parties are unable to agree on the arbitration clause. [Docket No. 27 at 4; Docket No. 31 at 5.] Arbitration was never discussed at the July 25, 2007, settlement conference and terms regarding arbitration are not present in the handwritten agreement. Therefore, no arbitration clause should be included in the final settlement agreement.

### III.    Conclusion.

For the reasons set forth, the Magistrate Judge recommends that the District Judge find the attached settlement agreement, which incorporates the foregoing findings and is marked as Exhibit 2, reflects the agreement the parties reached at the settlement conference and will bind the parties. The Magistrate Judge further recommends that dismissal of this action be deferred for forty-five days until after the District Judge adopts/modifies this Report and Recommendation,

thereby allowing the parties to bring any disputes regarding implementation of the terms of the final settlement agreement to the Court's attention.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:   10/19/2007

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Stephanie Lynn Cassman
LEWIS & WAGNER
scassman@lewiswagner.com

Ellen M. Corcella
CORCELLA & KING LLC
corcellasolutions@gmail.com

Robert R. Foos
LEWIS & WAGNER
rfoos@lewiswagner.com